**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MARCH SESSION, 1998**

FILED

May 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9707-CR-00279** |
| Appellee, | ) | |
| | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CAROLYN WADE BLACKETT** |
| **DARRELL BRADDOCK,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - First Degree Felony** |
| | ) | **Murder)** |

**FOR THE APPELLANT:**

JAMES BALL
217 Exchange
Memphis, TN 38105

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

WILLIAM L. GIBBONS
District Attorney General

PAUL GOODMAN
JANET SHIPMAN
Assistant District Attorneys
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On September 12, 1996, a Shelby County jury found Appellant, Darrell E. Braddock, guilty of first degree felony murder, criminal attempt: to wit especially aggravated robbery, criminal attempt: to wit murder in the first degree, and two counts of aggravated assault. Appellant appeals from his convictions, raising two issues:

      1) whether the evidence presented at trial was legally sufficient to support the jury's verdict; and

      2) whether the trial court erred in allowing the State, because of the victim's family's feelings, to withdraw its offer of a plea bargain.

After a review of the record, the judgment of the trial court is affirmed.

## FACTS

On January 12, 1994, at approximately 7:12 am, three armed masked men entered Dan's Big Star Grocery Store at 3237 Winchester, Memphis, Tennessee. At the time the men entered, Robby Allen, Jr., Felicia Bailey, Janice Cox, Angela Adams, Malcolm Clark, and Johnny Russell, along with other employees of the store, were inside the store. When Robby Allen, who was working in the store's office, saw a black male run across the store with a gun drawn, he reached for his own gun. Before Mr. Allen could draw his gun, Michael Irvin jumped over the partition between the office and the rest of the store and landed on Mr. Allen's shoulder. Irvin was armed. Mr. Allen and Mr. Irvin struggled for control of Mr. Irvin's weapon, in the process the weapon fired into the air.

While Mr. Allen and Mr. Irvin struggled, Appellant had run to cash register number two where Felicia Bailey, a store employee, was standing. Appellant pointed his gun at Ms. Bailey and ordered her to get down on the floor. Ms. Bailey complied. Appellant then turned and pointed the gun at Malcolm Clark, who also got down on the floor. Mr. Clark identified exhibit 15, a .380 caliber automatic pistol taken from Appellant's aunt's home, as a weapon resembling the gun which Appellant pointed in his face.

During the commotion, several shots were fired. One shot came from the store floor. Another came from the gun over which Mr. Allen and Mr. Irvine wrestled. In the struggle over the gun, Mr. Irvin fell and Mr. Allen fell on top of him. Mr. Allen reached for a pair of handcuffs that were in the office. As he was doing so, a gun was extended over the wall into the office and fired into the back of Mr. Allen's neck, causing him to lose consciousness.

Once the commotion ceased, Ms. Cox jumped over the back wall of the office and ran to a phone located in the rear of the store and called 911. Ms. Adams also called 911 and pulled the store's alarm.

Mr. Clark crawled along the floor toward the office. He saw Johnny Russell lying on the floor with a large amount of blood on the floor around him. Mr. Clark retrieved Mr. Russell's .357 Smith and Wesson pistol from the floor in front of Mr. Russell's body. Mr. Clark then climbed over the wall into the office and handcuffed Mr. Irvin and also confiscated Mr. Irvin's weapon, a .25 caliber automatic pistol. Mr. Clark picked up Mr. Allen's .380 caliber Browning pistol. Mr.

Allen recovered consciousness and gave the store keys to Mr. Clark, who locked the doors to the store.

Mr. Russell died as a result of a gunshot wound to his back. No bullet or bullet fragments were found in his body. Mr. Allen was hospitalized for ten days, recovering from the wound to his neck. A bullet was removed from his body. Mr. Irvin died as a result of gunshot wounds from a .38 or a .357 caliber revolver.

Appellant made a statement to Sergeant Timothy Cook, of the Memphis Police Department, which was introduced at trial. In the statement, Appellant confessed to being involved in the attempted robbery of Dan's Big Star Grocery. Appellant said he used a black .380 pistol (introduced at trial as exhibit 15) which belonged to his aunt. Appellant also stated that Carlos Rice was the third perpetrator in the robbery, and that he used a long-barreled revolver. Appellant stated that he took the revolver from Mr. Rice and threw it into a field. A Colt .38 revolver was located by the police in the field indicated by Appellant and was introduced at trial as exhibit 23. Appellant further stated that Mr. Rice told him that Mr. Rice had shot the store manager in the back (referring to Mr. Russell) because otherwise the manager would have shot him.

At trial Mr. Rice testified that he had plead guilty to murder in the perpetration of a robbery and related charges arising out of the attempted robbery of Dan's Big Star. He acknowledged that he is currently serving a life sentence for those crimes, but stated that he is attempting to obtain post-conviction relief from his plea. Mr. Rice testified that he did not have a gun during the attempted robbery, and denied that he shot Mr. Russell. He said that he

recognized the .380 automatic (exhibit 15) as Appellant's aunt's gun, but said that Appellant used the .38 revolver (exhibit 23) during the robbery. He further testified that Michael Irvin planned the robbery. He stated that the plan consisted of Mr. Irvin taking care of the people in the office, he was to be positioned at register one and Appellant was to take register two. Mr. Rice testified that he did not shoot Mr. Allen and did not see Appellant shoot him either.

The State also presented evidence at trial that Appellant's palm print was on the car used to convey the perpetrators to and from Dan's Big Star. A Mr. Steve Scott of the Tennessee Bureau of Investigation testified that he tested the Colt. 38, the .25 caliber, the Browning .380 automatic, and the Smith and Wesson .357 Magnum, and of those guns, the bullet which was taken from Mr. Allen's body could only have come from the .38 revolver. He was unable to state conclusively that the bullet did come from that gun, but ruled out the possibility that it came from one of the other guns found at the scene.

## I. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence presented at trial was not legally sufficient to support the conviction of criminal attempt: to wit murder in the first degree. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a

presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (*citing* State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d at 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Mathews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, the Tennessee Rules of Appellate Procedure, Rule 13(e) provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." *See also* State v. Mathews, 805 S.W.2d at 780.

At trial, the State presented the testimony of Carlos Rice, Appellant's cousin and partner in this crime. Mr. Rice testified that he did not carry a gun on the day of the attempted robbery, and that he did not shoot anyone. He also stated that Appellant used a .38 caliber revolver during the robbery. Expert

ballistics testimony revealed that a .38 caliber bullet was recovered from Mr. Allen's body.

The offense of first-degree murder, at the time of this crime, required a showing of an intentional, premeditated and deliberate killing. Tenn. Code Ann. § 39-13-202 (1991). A premeditated act is "one done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(2) (1991). Premeditation can be formed in an instant. State v. Brown, 836 S.W.2d 539 (Tenn. 1992). A deliberate act is "one performed with a cool purpose." Tenn. Code Ann. § 39-13-201(b)(1)(1991). Deliberation is present when the circumstances suggest that the actor contemplated the manner and consequences of his actions. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). On appellate review, questions of fact, contradictions in testimony, and the credibility of witnesses are left for the jury to resolve. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). There is ample evidence to support the conclusion that appellant shot Mr. Allen as Allen got the better of one of Appellant's compatriots during the robbery. Clearly, such a shooting was deliberate and premeditated. This issue is without merit.

## II. STATE'S REFUSAL TO OFFER PLEA BARGAIN

Appellant also complains that the family of Johnny Russell blocked an offer which the State had previously extended to Appellant regarding a plea agreement. It is well-settled that even in the presence of an agreement, an Appellant does not have an absolute right to have a plea bargain accepted. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

There is also no obligation on the State to offer any benefit or advantage to a defendant by reason of his pleading guilty, and aside from any agreement that may exist between a defendant and the State in reference to the entry of the guilty plea, the ultimate decision to accept or reject any such plea is to be made by the trial court. Williams v. State, 491 S.W.2d 862, 867 (Tenn. Crim. App. 1972). It is also well-settled that any plea bargain offer from the State is revocable until it is accepted by the trial court. *See* Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 2548, 81 L.Ed.2d 437 (1984). The ultimate decision whether to accept or reject a particular plea bargain agreement rests entirely with the trial court. A prerequisite to the effectiveness and enforceability of a plea agreement is its approval by the court. State v. Todd, 654 S.W.2d 379, 382 (Tenn.1983). In the matter sub judice, it appears that the State and Appellant had engaged in plea negotiations, but had not formally entered a plea. Until such time as the trial court accepts the plea agreement, the State is free to rescind any offer it makes.

While withdrawing a plea bargain offer prior to its acceptance by the trial court may be unacceptable if the withdrawal is premised on some invidious basis such as race, gender or religion, victim impact is not a prohibited basis for withdrawing an unapproved plea bargain offer. This issue is without merit.

Accordingly, for the aforementioned reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

-9-

_____
JOE B. JONES, PRESIDING JUDGE

_____
GARY R. WADE, JUDGE