# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY 1988 SESSION



**FILED**

**September 22, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | ) | |
| | ) | CCA NO: 02C01-9712-CC-00461 |
| Appellee, | ) | |
| | ) | GIBSON COUNTY |
| VS. | ) | |
| | ) | Dick Jerman, Jr., Judge |
| | ) | |
| **ANDREW COLE**, | ) | (Attempted First Degree Murder - |
| | ) | 1 Count; Attempted Second Degree |
| Appellant. | ) | Murder - 1 Count) |

**FOR THE APPELLANT:**

Clifford K. McGown, Jr.
113 North Court Square
P.O. Box 26
Waverly, TN 37185
(Appeal Only)

Tom W. Crider
District Public Defender
107 South Court Square
Trenton, TN 38382
(Trial and Of Counsel on Appeal)

**FOR THE APPELLEE:**

John Knox Walkup
Attorney General & Reporter

Clinton J. Morgan
Counsel for the State
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243-0493

Clayburn Peeples
District Attorney General

Larry Hardister
Assistant District Attorney General
110 South College Street, Suite 200
Trenton, TN 38382

OPINION FILED:_____

**AFFIRMED**

Robert W. Wedemeyer,
Special Judge

# O P I N I O N

On September 16, 1997, the appellant, Andrew Cole, was convicted by a jury of one count of attempted first degree murder, one count of attempted second degree murder, one count of aggravated assault and one count of unlawful possession of a firearm. In this appeal, the appellant's sole complaint is that the evidence was insufficient to support either the attempted first degree murder or attempted second degree murder convictions. Following our review of the evidence, we affirm the convictions.

**FACTS**

The testimony at trial revealed that one year prior to being released from prison, the appellant learned that his wife, Tammy Cole, was living with Johnny Crayton. According to Ms. Cole, the appellant had said upon his release from prison he was going to kill Cole and Crayton. When the appellant was released from prison, he and Ms. Cole sporadically dated each other. However, Ms. Cole was still seeing Mr. Crayton.

On the night of December 19 and on the morning of December 20, 1996, the appellant again threatened to kill both Cole and Crayton. On the afternoon of December 20, Corwyn Williams gave the appellant a ride to Milan Box Company. The appellant told Williams that he wanted to pick up his wife who worked at the factory. At 3:30 p.m. that afternoon Ms. Cole had finished her shift at the factory and came out of the building with her uncle, John Hannah. The two proceeded to Mr. Crayton's automobile when the appellant jumped out of Williams' vehicle, pulled out a gun and ran toward Mr. Crayton's automobile. When he reached the vehicle, he began shooting into it.

The first bullet came through the windshield and hit Mr. Crayton in the chest. Another bullet hit Ms. Cole in the leg while yet another shot hit Mr. Crayton in the back of the neck. The appellant shot Ms. Cole a second time in the leg. When the automobile eventually came to rest in a ditch, the appellant fired a final shot before fleeing. Although Mr. Hannah was not shot, a bullet passed through the rear passenger window.

Officer Jerry Hartsfield arrived on the scene where he determined that one shot had been fired through the front windshield in front of the driver, one shot had gone through the left rear passenger window and three shots had gone through the window at the driver's door. After retrieving the bullets that had been removed from Ms. Cole's body, Hartsfield

2

took them and the gun to the crime lab. Lab results indicated that the recovered gun was used to shoot Cole and Crayton. The appellant was found hiding under his girlfriend's bed. A .38 semi-automatic pistol was found under the mattress.

The appellant testified that he was married to Ms. Cole when the incident occurred. He explained that he did not know that Mr. Crayton would be at the factory when he went to the factory to talk to Ms. Cole. The appellant said that, although he had not planned to take any action, he "freaked out" when he saw Ms. Cole get in Crayton's car. The appellant explained that he carried a weapon daily after an earlier incident in which he was shot. On cross-examination the appellant admitted that he had two convictions of aggravated assault and one reckless endangerment. He also admitted that he had threatened two or three times to kill Ms. Cole; however, he had not gone to the factory with the purpose of hurting anyone.

On rebuttal, Officer Terry Jones testified that prior to the incident the appellant had told him that he was "about ready to return to the pen." He added that if he did return to prison, it would be because he had shot his wife and her boyfriend.

## LEGAL ANALYSIS

The appellant's only complaint is that the evidence was insufficient to support his convictions of attempted first degree murder and attempted second degree murder.

When the sufficiency of the evidence is challenged, the standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, reevaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Carey, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

In a criminal trial, great weight is given to the result reached by the jury. State v. Johnson, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995). Once approved by the trial court,

3

a jury verdict accredits the witnesses presented by the state and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

The appellant's primary argument is that the evidence was insufficient to prove the mental state required for either attempted first or second degree murder. Instead, he argues that the evidence points to attempted voluntary manslaughter.

## A. Attempted First Degree Murder

In order to convict the appellant of attempted first degree murder, the State was required to prove that the appellant, acting with the kind of culpability otherwise required for this offense acted "with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part" and that the result intended was the "premeditated and intentional killing of another." Tenn. Code Ann. §§ 39-12-101(a) and 39-13-202(a)(1) (1997).

Viewing the evidence in the light most favorable to the State, the evidence showed that the appellant threatened to kill Ms. Cole on more than one occasion. In fact, he renewed his threat the evening before the incident and again on the morning of the incident. With a gun on his person, the appellant asked someone to transport him to the factory where Ms. Cole worked. When Ms. Cole exited the building, the appellant ran toward her and fired shots into the car. The appellant paused and shot again. When the vehicle came to rest in a ditch, the appellant ran over to it and shot at least twice more.

The State had the burden of proving the element of premeditation. Premeditation necessitates "the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-201(b)(2). Premeditation includes instances of homicide committed by poison or lying in wait and requiring a previously formed design or intent to kill. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992).

The proof set out above indicates that the appellant threatened the victim on at least

4

three occasions. In addition, the appellant carried a gun with him to the factory on the afternoon of the incident. Further, the appellant ran toward the vehicle and fired shots into it. Witnesses testified that the appellant returned to fire additional shots. This evidence clearly supports the mental elements necessary to prove attempted first degree murder.

The appellant argues that the proof supports his position that he went to the factory to talk with the victim. It was only when he saw the victim getting into Crayton's car that he "lost it." Further, he claims that he possessed the gun merely for self defense against another individual. These assertions are merely challenges to the credibility of the witnesses. Such a determination can only be made by the jury. Here, the jury accredited the State's testimony. On appeal, we will not reweigh the evidence or judge credibility. Accordingly, this issue has no merit.

### B. Attempted Second Degree Murder

The appellant also challenges the jury's verdict finding him guilty of the attempted second degree murder of Mr. Crayton. Although his attack is somewhat general, it appears that he is contending that the mental element required for attempted second degree murder was not supported with sufficient evidence. Instead, he insists that the proof clearly showed a passionate and impulsive.

To support a conviction of attempted second degree murder, the proof must establish that the appellant knowingly attempted to kill Crayton, without adequate provocation and with the belief that his conduct would result in Crayton's death without further conduct on his part. State v. Belle, No. 03C01-9503-CR-00094 (Tenn. Crim. App. Mar. 6, 1996).

The testimony revealed that the appellant knew while in prison that Ms. Cole was sleeping with Mr. Crayton. Further, upon his release from prison, he knew that Ms. Cole continued to see Mr. Crayton. In fact, the appellant was also seeing someone else. The appellant had included Mr. Crayton in his death threats made to Ms. Cole on at least three occasions. On the afternoon of the incident, the appellant carried a gun with him to the factory where his wife worked. As Ms. Cole exited work that date and proceeded to

5

Crayton's vehicle, the appellant ran toward the vehicle and fired shots into the window closest to Crayton. When the car came to a rest in the ditch, the appellant paused and walked back to the vehicle and fired additional shots. He successfully hit Mr. Crayton with two of his shots resulting in a lengthy hospital stay.

This record is clear that the appellant acted knowingly. Further, the proof fails to support adequate provocation. Although he knew Crayton was sleeping with Ms. Cole, the appellant's knowledge was long held. He knew while in prison and when he was released. Nothing in the record indicates that some event happened on the day in question to supply the provocation and impulsiveness to reduce his actions to attempted voluntary manslaughter. Again, most of appellant's complaints are credibility challenges. These were resolved by the jury in favor of the State. We will not usurp that role. This issue is similarly without merit.

## CONCLUSION

Because this Court has found that the evidence was sufficient to support both convictions, the appellant's issues are without merit. Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER,
Special Judge

CONCUR:

_____
JOE G. RILEY, Judge

_____
CURWOOD WITT, Judge

6