**STATE of Tennessee, Appellee,**

v.

**William WEST, Appellant.**

Supreme Court of Tennessee,
at Nashville.

Nov. 23, 1992.

---

J.H. Reneau, III, Celina, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Merrilyn Feirman, Asst. Atty. Gen., Nashville, Tom P. Thompson, Dist. Atty. Gen. and John Wootten, Asst. Dist. Atty. Gen., Hartsville, for appellee.

## OPINION

DAUGHTREY, Justice.

With the passage of the Appellate Courts Improvements Act of 1992, the jurisdiction of this Court has become almost completely discretionary.[1] This means that as to non-capital criminal cases, we function primarily as a law-development court, rather than as an error-correction court. Occasionally, however, a criminal case comes to our attention in which the sufficiency of the evidence to sustain the conviction is seriously in doubt. This appeal is one of those troubling cases, and, thus, we granted review principally to scrutinize the proof offered to convict the defendant of first-degree murder. As noted below, we find that proof to be lacking, and it thus becomes necessary to reduce the conviction to second-degree murder.

In addition to sufficiency of the evidence, this appeal also raises questions involving the admissibility of certain character evidence; the propriety of the trial court's jury instruction on the inferences to be drawn from the concealment of evidence; and the validity of the sentencing procedure by which the defendant received a life sentence.

### 1. *Factual Background*

The record indicates that on the day of the murder, the victim, Sam Jones, was mowing weeds along the roadside when he came upon defendant William West, also on a tractor. No one else was present at their meeting. West testified that Jones insulted and threatened him, that West then went home briefly, and that upon his return Jones attacked him with an iron bar,

---

1. 1992 Public Acts, ch. 952, §§ 1–15. Under the Act, the only direct appeal jurisdiction retained by the Court is in workers' compensation cases. Capital cases are also reviewed automatically, but only after they have first been reviewed by the Court of Criminal Appeals for errors affecting conduct of the trial.

prompting West to get off of his tractor and shoot Jones in self-defense. The state presented the testimony of several passersby, one who testified to the victim's neighborliness in frequently mowing the roadside grass, and one who drove past the men and recalled seeing no weapon in the victim's hand. One young girl testified that she saw the two men on their tractors from her home. No other evidence was presented of events preceding the shooting.

The evidence of events after the shooting revealed that West waited an hour and a half before calling the police. Before the police arrived, West put his tractor and trailer away, went to the grocery store, and briefly visited a friend, all without mentioning the incident. After the police arrived and arrested him, West gave them permission to search the premises for the gun, and when they were unsuccessful in finding it, he eventually took them to the place where he had hidden it in some weeds.

The physical evidence was sparse. While in jail West was treated for a scrape on his arm that he claimed the victim had inflicted with the iron bar; however, a serologist found no blood on the bar. A medical examiner testified that a "distant gunshot wound" killed the victim and that the bullet traveled downward through the victim's chest and abdomen, an unlikely trajectory if West was shooting from the ground. Based on the above evidence, the jury convicted West of first degree murder.

## 2. *Sufficiency of the Evidence*

The defendant was convicted under the murder statutes in effect for acts committed before November 1, 1989. The law at that time defined murder generally as the "unlawful[ ] kill[ing of] any reasonable creature in being, and under the peace of the state, with malice aforethought, either express or implied ..." T.C.A. § 39–2–201 (repealed 1989). Defendant was prosecuted for first-degree murder, defined in pertinent part as "[e]very murder perpetrated by ... willful, deliberate, malicious and

premeditated killing." T.C.A. § 39–2–202 (repealed 1989). Although malice, which is the intent to do any unlawful act that will likely result in taking the life of another,[2] is an essential element of any murder, the elements of premeditation and deliberation distinguish first-degree murder from all other types of homicide. As we recently noted in *State v. Brown,* 836 S.W.2d 530, 543 (Tenn.1992):

> The law in Tennessee has long recognized that once the homicide has been established, it is presumed to be murder in the second degree. The state bears the burden of proof on the issue of premeditation and deliberation sufficient to elevate the offense to first-degree murder. (Citations omitted.)

In this case, although ample evidence indicates that the defendant maliciously killed his victim, the state failed to produce *any* evidence that the intent to kill was premeditated and deliberate. The element of premeditation requires a previously formed design or intent to kill. *McGill v. State,* 4 Tenn.Crim.App. 710, 720, 475 S.W.2d 223, 227 (1971); *Swan v. State,* 23 Tenn. (4 Hum.) 136, 139 (1843). Deliberation, on the other hand, requires that the killing be done with a cool purpose—in other words, that the killer be free from the passions of the moment. *See State v. Bullington,* 532 S.W.2d 556, 559 (Tenn. 1976); *Winton v. State,* 151 Tenn. 177, 191, 268 S.W. 633, 637 (1925). Moreover, as indicated in our recent opinion in *State v. Brown,* the fact that "premeditation can be formed in an instant" must be viewed in contrast to the element of deliberation, which obviously cannot be formed "instantaneously." While it remains true that no specific length of time is required for the formation of a cool, dispassionate intent to kill, *Brown* requires more than a "split-second" of reflection in order to satisfy the elements of premeditation and deliberation. *Brown,* 836 S.W.2d at 543. Without evidence that the killing was willful, malicious, premeditated, and deliberate, this

---

**2.** *Humphreys v. State,* 531 S.W.2d 127, 133 (Tenn.Crim.App.1975); *Bailey v. State,* 479

S.W.2d 829 (Tenn.Crim.App.1972).

Court cannot uphold a conviction for first degree murder. *Everett v. State,* 528 S.W.2d 25, 26 (Tenn.1975); *Bass v. State,* 191 Tenn. 259, 269, 231 S.W.2d 707, 711 (1950).

■ The prosecution maintains that it has adequately proven premeditation and deliberation for three reasons. First, the state asserts a theory that after arguing with the victim, West dispassionately returned to his house where he retrieved his gun for the specific purpose of killing the victim. While the state's theory may be true, it remains only a theory, because the prosecution has no evidence to support it. No one witnessed the defendant's retrieval of a gun, nor does any circumstantial evidence exist to support this theory. The defendant admitted to returning to his house, but insisted that he had carried his gun with him all morning. Thus, a jury would have to engage in pure speculation to conclude that the defendant had returned to his house in order to get a gun with which to shoot Jones. Although the jury is permitted to disbelieve the defendant's testimony, it may not construct a theory based on no evidence at all.

■ As additional evidence of premeditation, the state suggests that the defendant's calmness immediately following the shooting proves that the murder was premeditated. Calmness immediately after a killing may be evidence of a cool, dispassionate, premeditated murder. *See State v. Browning,* 666 S.W.2d 80, 84 (Tenn.Crim. App.1983); *Sneed v. State,* 546 S.W.2d 254, 258 (Tenn.Crim.App.1976). In this case, however, no evidence exists of the defendant's demeanor immediately after the killing, except his own testimony that he was upset. Although the defendant waited an hour and a half to report the shooting and put his tractor and trailer in the barn before calling the police, there is no evidence concerning his emotional state during this time. Furthermore, the fact that he briefly went to the store and to see a friend without describing the incident does not prove premeditation. One who has recently killed another person recklessly, passionately, or even negligently may be extreme-

ly hesitant to reveal the details of the crime, and yet not be guilty of first degree murder. Thus, while the defendant's behavior manifests such indifference to the victim and fear of detection that the jury might discredit his self-defense story, West's failure to report the shooting to the police fails to establish premeditation and deliberation in advance of the murder.

Finally, the state claims that West's concealment of the gun is proof of premeditation. Again, we disagree. The court in *Cagle v. State,* 507 S.W.2d 121, 129 (Tenn. Crim.App.1973), held that the concealment of evidence may itself be evidence of guilt. *See also State v. Cate,* 746 S.W.2d 727, 729 (Tenn.Crim.App.1987); *Sotka v. State,* 503 S.W.2d 212, 220 (Tenn.Crim.App.1972). The concealment of evidence, however, may be associated with the commission of *any* crime and the accompanying fear of punishment. One who kills another in a passionate rage may dispose of the weapon when reason returns just as readily as the cool, dispassionate killer. The fact that evidence is subsequently hidden from the police reveals nothing about a criminal's state of mind before the crime. Thus, while the concealment of evidence discredits defendant's self-defense excuse, it does not provide evidence of premeditation. *Cagle* simply permits the concealment of evidence to be used as evidence of the commission of a crime generally; it does not prove the specific element of premeditation.

The state offers no other evidence of defendant's commission of a deliberate and premeditated murder. On these facts, we cannot uphold a conviction for first degree murder. As previously noted, in the absence of proof of deliberation and premeditation, an unlawful killing is presumed to be second degree murder. *State v. Brown,* 836 S.W.2d at 543, *State v. Bullington,* 532 S.W.2d 556, 560 (Tenn.1976). There is however, ample evidence in the record to establish that the defendant maliciously shot and killed Sam Jones, without adequate provocation. Thus, in reversing the conviction for first-degree murder, we modify the

judgment to show a conviction of second degree murder.

### 3. *Admissibility of Character Evidence*

The defendant also appeals the allegedly improper admission of general reputation evidence and proof of a prior bad act. The state sought to introduce this evidence by telling the court that it would be used both to show West's violent nature and to impeach West if he testified. The trial judge allowed the prosecutor to ask West if he considered himself to be a peaceful person and if he had ever threatened to kill a man named Jodie Copas. After West described himself as being "as peaceful as anybody else," and denied threatening Copas, the court permitted the prosecutor to call Copas as a "rebuttal witness." Copas testified that West had threatened him during an argument that occurred four to five years before the Jones murder. We conclude that Copas's testimony on the grounds advanced at trial, was improperly admitted.

■ Character evidence is generally inadmissible to show conformity with a certain trait on a particular occasion. Tenn.R.Evid. 404(a); *Laird v. State*, 565 S.W.2d 38, 40 (Tenn.Crim.App.1978). An accused, however, may affirmatively choose to place his or her character in issue. Only after the defendant has done so may the state present its own character evidence in rebuttal. Tenn.R.Evid. 404(a)(1); *see, e.g., Durham v. State*, 128 Tenn. 636, 640, 163 S.W. 447, 448 (1913).

■ The particular trait of truthfulness, however, is always an issue when a witness testifies. Thus, in contrast to the use of character evidence to show conformity with a trait such as violence or peacefulness, reputation and opinion evidence is always admissible to attack a witness's credibility. Tenn.R.Evid. 608(a). A witness may also be asked about specific examples of conduct that pertain to truthfulness. Specific instances of conduct, however, may not be proven by extrinsic evidence; the questioner is bound by the witness's answer. Tenn.R.Evid. 608(b).

■ Specific examples of bad conduct may be admitted for other purposes as well. For example, when a prior bad act reveals a defendant's motive, shows a common scheme or plan, or rebuts a defendant's theory that the charged offense was an accident or mistake, the trial court may admit evidence of the prior bad act after holding a hearing out of the jury's presence. At the hearing the trial judge must weigh the probative value of the evidence against possible unfair prejudice to the defendant. Tenn.R.Evid. 404(b).

■ In this case, West never made an issue of his good character. Not until the state asked him on cross-examination whether he was peaceful did he indicate that he was "as peaceful as anybody else." West had never described himself as a non-threatening person before the state asked him if he had threatened Copas. The trial court clearly erred by allowing the state to attempt to show West's propensity for violence by questioning him about his "peaceful" nature and about his prior threat.

■ Nor is there any validity to the prosecution's argument at trial that the evidence was admissible to impeach the defendant's credibility after he testified. The prosecution in a criminal case is not permitted to open the door to questions of an accused's propensity for violence or peacefulness under the pretense of gathering ammunition for a credibility attack. *State v. Patton*, 593 S.W.2d 913, 917 (Tenn. 1979); *see also Hatchett v. State*, 552 S.W.2d 414 (Tenn.Crim.App.1977) ("the State cannot ask a witness an irrelevant but prejudicial question, and then, under the theory of impeachment, predicate a second irrelevant and prejudicial question upon defendant's response to the question"). Even assuming that these questions were not asked under pretense, the state should not have been permitted to ask West about his peaceful nature or about a prior threat. A threatening character does not bear on one's credibility, and thus is irrelevant for impeachment purposes. In addition, because extrinsic evidence of specific conduct is never permitted for impeachment purposes, Copas's testimony

should not have been allowed. For all of these reasons, we find the admission of Jodie Copas's testimony to have been highly improper.

On appeal, the state concedes that the trial court erred in admitting Copas's testimony on the grounds advanced at trial, but now belatedly argues that the evidence in question is admissible to prove that West's motive for the murder was his unusually possessive attitude about his property. Although Tenn.R.Evid. 404(b) permits prior bad acts to be admitted for purposes other than showing conformity with a particular character trait, this testimony should not have been admitted to show West's motive for the murder. The trial court never weighed the relevance of Copas's testimony to show motive against the danger of unfair prejudice to the defendant, especially in terms of its remoteness in time and place. The trial court must perform such an analysis after a hearing outside the jury's presence. Without such an analysis in the record, we cannot properly review the admissibility of the evidence for the purpose of showing motive and, therefore, cannot rule that Copas's testimony was properly admitted for this purpose.

Thus, we conclude, first, that the trial court's introduction of character evidence showing West's propensity for violence was highly improper under Tenn.R.Evid. 404(a). In addition, such evidence was improperly used under the guise of the impeachment of West's credibility. Evidence of the defendant's threatening nature has no bearing on his truthfulness, and Copas's testimony should have been forbidden as extrinsic evidence of a prior bad act. Finally, we cannot review the admission of this evidence to prove the defendant's motive, because the trial court did not weigh the probative value of the evidence against the danger of unfair prejudice to the defendant.

■ Nevertheless, in the face of this clearly inadmissible evidence, we are forced to conclude that its admission was harmless. The proof of defendant's malicious intent to kill was overwhelming, so that it becomes impossible to believe that the ab-

sence of Copas's testimony would have led to an acquittal. West confessed to the killing. His attempt to conceal the weapon, his delay in calling the police, and the fact that he had only a minor wound are all facts that seriously undermine his self-defense story. The bullet's trajectory belies the defendant's claim that he shot the victim from the ground, and the absence of blood on the iron bar further contradicts West's story. Moreover, evidence of the victim's character fails to jibe with the defendant's description of him as an aggressive, threatening, would-be killer. In contrast to the strong evidence of West's guilt is the relatively weak testimony of Copas. The alleged threat was remote in time, was not carried out, and was relayed by someone with an obvious grudge. The admission of this evidence does not affirmatively appear to have affected the outcome of the trial, and, therefore, we deem the error to be harmless in accordance with Tenn. R.Crim.P. 52(a).

■ Finally, West challenges the admission of the evidence of the victim's good character. His challenge is meritless. The state is clearly permitted to present evidence of the victim's good character to rebut defendant's suggestion that he killed the victim in self-defense. *See* Tenn. R.Evid. 404(a)(2).

### 4. *Jury Instruction on Concealment of Evidence*

The defendant next challenges as erroneous the jury charge that "[a]ny attempt to suppress, destroy, or conceal evidence is relevant as a circumstance from which guilt of an accused so acting, may be inferred." The defendant argues that the instruction is not a "pattern" instruction and that it does not explain how concealment is relevant to a specific element of the offense charged. Moreover, he insists that the charge regarding the proper use of inferences was not among the pattern instructions and did not sufficiently instruct the jury how to use inferences.

■ We find that the trial court properly charged the jury on the conceal-

ment of evidence. There is no requirement limiting a trial court to the use of "pattern instructions." Other jurisdictions, too, find that jury instructions need not be in any particular form unless a statute states otherwise. *See* cases collected at 23A C.J.S. *Criminal Law* § 1309; *see also Asbury v. State*, 175 Ga.App. 335, 333 S.E.2d 194 (1985). In this case, the jury was properly charged in accordance with *Cagle v. State*, 507 S.W.2d at 129, that the defendant's concealment of evidence may be taken as proof of guilt. Although we have previously stated in this opinion that the concealment of evidence is not an indication of premeditation or deliberation, it is equally clear that the concealment of evidence may be relevant to guilt. For example, in this case the concealment of evidence contradicts defendant's self-defense story by illustrating his fear of detection. Thus, this instruction was properly given.

■ West also complains that the court erred by not instructing the jury on the "presumption of inferences" in accordance with *Tennessee Pattern Instructions* § 37.19. Because the defendant failed to request this instruction, failed to object to its omission, and failed to include this specific ground in his motion for a new trial, we conclude that the matter has been waived on appeal.

### 5. *Propriety of the Sentence*

Finally, the defendant cites as reversible error the trial judge's imposition of a life sentence in this case. Because we hold that defendant's conviction for first-degree murder must be reversed for insufficiency of the evidence, this issue has become moot. The judgment of the Court of Criminal Appeals upholding the first-degree murder conviction is reversed, and the judgment of the trial court is modified to show the defendant's conviction of second-degree murder and the imposition of the minimum sentence for that offense. If the state wishes to challenge the sentence, it must file an objection within 30 days, in order to effect a remand to the trial court for further proceedings on the penalty.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.