# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY 1998 SESSION

FILED

March 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| Appellee, | ) C.C.A. No. 02C01-9702-CR-00059 |
| | ) |
| V. | ) Shelby County |
| | ) |
| **JAMES H. MABRY,** | ) Hon. James C. Beasley, Sr., Special Judge |
| | ) |
| Appellant. | ) (First Degree Murder) |
| | ) |

FOR THE APPELLANT:

Seymour S. Rosenberg
Attorney at Law
371 Carroll Avenue
Memphis, TN 38105

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Deborah A. Tullis
Assistant Attorney General
Cordell Hull Building, 2d Floor
425 Fifth Avenue North
Nashville, TN 37243

William L. Gibbons
District Attorney General

Charles W. Bell, Jr.
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

OPINION FILED: _____

**MODIFIED AND REMANDED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

The appellant, James H. Mabry, was convicted by a jury of first degree murder and sentenced to life in prison for the shooting death of his girlfriend, Aretha Howard.   The appellant's sole issue for our review is whether the evidence is sufficient regarding premeditation to support his conviction for first degree murder.  We reverse the judgment of first degree murder, modify it to second degree murder, and remand the case to the trial court for the appellant's sentencing for second degree murder.

On the morning of July 29, 1995, Ms. Howard drove the appellant's white Cadillac to a neighbor's home because the victim thought it was too hot to walk. According to the appellant's statement to the police, he had told Ms. Howard not to drive the car because the engine light was coming on; and he feared the engine would be damaged.  A mechanic had told him that the car would not get good gas mileage, and the appellant also thought that something else might be wrong with the car.  Ms. Howard stayed at the neighbor's home for a couple of hours and then returned to her house.

When the appellant returned to Ms. Howard's house from Tunica, Mississippi, he noticed that she had driven his Cadillac.  According to the appellant's statement, he and Ms. Howard began arguing in the bedroom, and the argument continued into the kitchen.  The appellant's statement indicates that he went into the living room, and Ms. Howard then came into the living room. The appellant stated that the two were shouting at each other when Ms. Howard spit in his face and hit him with an ashtray.  He indicated that he told her, "Stop, I don't want to hurt you!"  He then indicated that the two shoved each other, and then Ms. Howard went down the stairs and out the backdoor.

The appellant's statement further indicates that Ms. Howard got a fireplace log on the outside of the house and started hitting the appellant's Cadillac. The appellant indicated that he went to the door and told her to stop hitting his car, but she continued. The appellant then went outside. As Ms. Howard continued to hit the appellant's car, the appellant told her to stop repeatedly. At trial, the appellant's ex-wife, Maime Murphy, testified that there were dents in the roof of the Cadillac, which she took possession of in early August 1995. When Ms. Howard would not stop, the appellant stated that he pulled a .38 revolver from his right front pants pocket. In his statement to the police, the appellant stated that Ms. Howard "came toward me with the log in her hand saying, 'Well, shoot me then!'" The appellant shot her three times in rapid succession. The appellant indicated that he was scared and did not know what to do, so he left in his Cadillac and drove around for a while before returning to Tunica. He was arrested several hours later by the Tunica County Sheriff's Department.

Ms. Khari Gray, a neighbor who lived across the street, heard shots and looked out her bedroom window. She testified that she saw the victim lying on her driveway. Although she did not see anyone else, she did see a yellow Lincoln and a white Cadillac in the driveway. Ms. Gray called 911, and when she looked out the window again, she saw the white Cadillac moving down the street.

According to testimony at trial, the appellant and Ms. Howard, who had lived together intermittently for three to five years, had a turbulent relationship. The appellant apparently telephoned the victim's mother, Irma Foster, on the morning of the shooting, July 29, 1995, and told her that she "was going to have a dead daughter." Also, he had threatened the victim during a telephone conversation with Ms. Foster about a week before the shooting. According to testimony at trial, Ms. Howard had wanted the appellant to move out of her house.

When the paramedics arrived, they found the victim lying on her driveway. They placed a tarp over her body, but the wind kept blowing the tarp away. The testimony at trial indicates that someone in a blue uniform, either a paramedic or a police officer, got the logs from the side of the victim's house and placed them on the tarp. The appellant contends that none of the state's witnesses recalled seeing a log near Ms. Howard's body, which he insists was there.

Dr. Wendy Gunther, an assistant medical examiner for Shelby County, performed the autopsy on the victim. She testified that Ms. Howard was shot three times: once in the pelvis, once in the shoulder, and once in the back of the head, which was the fatal wound. She further testified that it was possible that the wound to the back of the head could have occurred if Ms. Howard had fallen forward from one of the other two shots in such a way that the bullet could have entered the back of the head. Dr. Gunther also testified that the three shots were fired from a distance of more than three feet, although she could not tell the exact distance. She also testified that the autopsy revealed that Ms. Howard had a blood alcohol level of .21 and that she had ingested cocaine as well. The autopsy revealed that the level of alcohol in Ms. Howard's brain was more than half of her blood alcohol level, thus indicating that she had been drinking heavily thirty minutes before her death. Dr. Gunther also testified that the combined effects of cocaine and alcohol would produce decreased inhibition and an increased adrenaline-like release.

The appellant argues that the evidence is insufficient regarding premeditation to sustain the appellant's conviction for first degree murder. The appellant argues that the state "failed to show that Mr. Mabry's mental state at the time of the shooting was 'sufficiently free from excitement and passion.'" The appellant contends that he "was embroiled in a heated altercation with Ms. Howard that began in her house and progressed out into the front driveway." He

further asserts that Ms. Howard, who was under the influence of alcohol and cocaine at the time, spit in his face, threw an ashtray at him, hit his car with a log, and threatened him with a log.

First, the appellant maintains that there is no evidence that he planned the killing because before the shooting, he had been gambling at a casino. Second, he contends that there is no evidence that he had any motive for the shooting. Third, he argues that there is no evidence that he acted according to any "preconceived design." He theorizes that had he had a design he would not have killed the victim out in the open for the whole world to see.

The state argues that the evidence is sufficient to support the appellant's conviction for first degree murder. It contends that the appellant's threats, his possession of a revolver, and his shooting of an unarmed woman three times indicate premeditation.

Once a homicide has occurred, it is presumed to be second degree murder, and the state has the burden of proving first degree murder. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). At the time of the offense, first degree murder was defined as "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1995). Premeditation is defined as follows:

> "[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d). Premeditation indicates "a previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). At the time of the offense, second degree murder was defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (Supp. 1995).

When appellants challenge the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e); <u>State v. Duncan</u>, 698 S.W.2d 63 (Tenn. 1985). The weight and credibility of a witness' testimony are matters entrusted exclusively to the jury as the triers of fact. <u>State v. Sheffield</u>, 676 S.W.2d 542 (Tenn. 1984); <u>Byrge v. State</u>, 575 S.W.2d 292 (Tenn. Crim. App. 1978).

Based on the record before us, the appellant and Ms. Howard began to argue inside Ms. Howard's home, where Ms. Howard threw an ashtray at the appellant and spit at him. Ms. Howard, who had a blood alcohol level of .21 and had ingested cocaine as well, left the house and began beating the appellant's car with a log and threatening him with the log as well. The appellant then pulled a revolver from his pants pocket and shot Ms. Howard three times in rapid succession. From the facts of this case, we must agree with the appellant that the state failed to show that the appellant was "free from passion and excitement as to be capable of premeditation." Therefore, we reverse the judgment of first degree murder and modify it to second degree murder. We remand the case to the trial court for the appellant's sentencing for second degree murder. Because the state filed a notice of enhancement before trial, it may seek enhancement of the appellant's sentence at the new sentencing hearing. <u>See State v. Dunn</u>, 901 S.W.2d 398, 399-400 (Tenn. Crim. App. 1995).

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
DAVID G. HAYES, Judge


_____
JOE G. RILEY, Judge