IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2001

**STATE OF TENNESSEE v. ERIC PHILLIPS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-12504     John P. Colton, Jr., Judge**

---

**No. W1999-01800-CCA-R3-CD  - Filed June 26, 2001**

---

The defendant appeals and asserts that the evidence was insufficient to support his conviction for first degree premeditated murder. After review, we hold that the evidence is sufficient; therefore, we affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

A C Wharton, Jr., District Public Defender, and Garland Ergüden, Assistant Public Defender, for the appellant, Eric Phillips.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Thomas Hoover, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Eric Phillips, was indicted by the Shelby County Grand Jury for first degree premeditated murder and first degree felony murder done in the perpetration of or attempt to perpetrate a robbery. A jury trial was held on October 26, 1999 and concluded on October 30, 1999. The jury found the defendant guilty of first degree premeditated murder and not guilty of first degree felony murder. The defendant was sentenced to life on November 1, 1999 and he filed a motion for new trial on December 1, 1999. He then filed a notice of appeal on December 8, 1999. In this direct appeal he asserts that the evidence was insufficient to support his conviction for first degree premeditated murder.

## Facts

At trial, Officer Robert Earl Galison testified that in the early morning hours of April 7, 1998, he received a dispatch to the Oakview Apartment Complex to investigate a reported shooting. As he arrived, he noticed a purplish Cadillac, which was still in gear and running, up against a dumpster. Officer Galison noticed bullet holes in the driver's side door of the car and that the victim was deceased. He notified the dispatcher and secured the crime scene. He was unable to locate any witnesses to the shooting.

The State's next witness was Veronica Ward, a resident of Oakview Apartments. She testified that she was awakened in the early morning hours of April 7, 1998 by several gunshots. She immediately got out of bed, went to her window, and opened the curtains. When she looked out of her window she saw the defendant, whom she later identified in a police photo lineup, running toward a gray Astro minivan. She recognized that the minivan was being driven by Derrick "Chicken" Cole. She testified that when she saw the defendant ,he was wearing a white tank-top T-shirt, blue Air Jordan pants, and black and white Air Jordan shoes. She also testified that he was carrying what she described to be an AK47 assault rifle. She then saw the defendant dive into the minivan. Ms. Ward then got dressed and ran downstairs to the scene of the shooting. She looked in the car and saw the victim slumped over with his brains exposed through the back of his head.

Christene Phillips, who resided at Kennel Cabana Apartments, which are across the street from Oakview Apartments, was the next witness for the State. In the early morning of April 7, 1998, her live-in boyfriend, Derrick "Chicken" Cole, returned with her gray minivan and told her there had been a murder at the Oakview Apartments. She testified that six or seven other people arrived between 2:00 and 4:00 a.m., including "Mississippi," "Owen," "Little D.," "Bowdy," and the defendant, known to her as "E." While the entourage was there, she overheard the defendant state that he "got that boy" and explained that he did so because he wanted some parts from the victim's car. Ms. Phillips explained to the jury that the defendant owned a blue Cadillac similar to the one driven by the victim.

Officer Alvin Peppers next testified for the State. He collected six spent shell casings from the crime scene and metal fragments from the victim's car. He also made diagrams of the bullet holes in the car.

Virginia West, the victim's sister, testified that she was notified by telephone soon after the shooting and immediately went to the scene. When she arrived she identified her brother for the police. She also testified that she recalled seeing the defendant at the crime scene wearing a black hooded sweatshirt, not a white tank top.

The State's final witness was medical examiner, O.C. Smith. Dr. Smith testified that the victim died as a result of two gunshot wounds to his head. The victim also had a grazing gunshot

wound to his left shoulder, a fragment wound to the back of his left upper arm, and an extensive gunshot wound entering his left thigh and exiting his right thigh. Dr. Smith confirmed that the bullet fragments he recovered from the victim were consistent with the type that would be fired from an AK47 assault rifle. Also, the victim's wounds were consistent with the type of injury inflicted by the type of bullet fired from an AK47.

The defendant offered no proof and chose not to testify.

## Analysis

The defendant's sole contention on appeal is that the evidence is insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt of violating Tennessee Code Annotated section 39-13-202(a)(1), first degree premeditated murder. We review challenges to sufficiency of the evidence according to well-settled principles. A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Tuggle, 639 S.W.2d at 914. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). In concluding our evaluation of the convicting evidence, this court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996).

The jury convicted the defendant of first degree premeditated murder. In Tennessee, first degree premeditated murder is defined as a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Intentional is defined as the "conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18). Premeditation is defined as "an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). A showing of premeditation also requires that the intent to kill be formed prior to the act of killing. Id. However, there is no requirement for a purpose to kill to pre-exist in the mind of an accused for any definite period of time. Id.

The elements of premeditation and intent may be established by proof of the circumstances surrounding the killing. See State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997). Several factors that tend to support the existence of these elements include: the use of a deadly weapon on an unarmed victim; the particular cruelty of the killing; and calmness immediately after the killing. See State v.

Pike, 978 S.W.2d 904, 914 (Tenn. 1998); Bland, 958 S.W.2d at 660; State v. Brown, 836 S.W.2d 530, 541-42 (Tenn. 1992); State v. West, 844 S.W.2d 144, 148 (Tenn. 1992). Existence of these elements are questions to be resolved by the trier of fact. See Bland, 958 S.W.2d at 660.

At trial, the State presented evidence, via the testimony of Veronica Ward, that immediately after she heard several gunshots outside her apartment she looked out her window and saw the defendant diving into a van and carrying an AK47 assault rifle. Although some of her testimony was conflicting, the jury ultimately resolved all conflicts in favor of the State. The jury also had before it evidence from Christene Phillips that she heard the defendant telling others that he "got that boy." She also heard the defendant telling others that he killed the victim so he could get some of the parts from the victim's car, one similar to the defendant's. Viewed in the light most favorable to the State, the jury's guilty verdict is clearly supported by sufficient evidence.

## **Conclusion**

After review of the entire record before us, we hold that sufficient evidence exists to support the defendant's conviction for first degree premeditated murder. We affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-4-