IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 4, 2003 Session

## STATE OF TENNESSEE v. JERRY RAY DAVIDSON

**Automatic Appeal from the Court of Criminal Appeals**
**Criminal Court for Dickson County**
**No. CR2232      Allen Wallace, Judge**

--------

**No. M1998-00105-SC-DDT-DD - Filed October 20, 2003**

--------

E. RILEY ANDERSON, J., with whom ADOLPHO A. BIRCH, JR., J., joins in part, dissenting.


I disagree with the majority's decision affirming the defendant's conviction and sentence for premeditated first degree murder. After reviewing the record, I am convinced that the evidence was insufficient for a rational trier of fact to have found the element of premeditation beyond a reasonable doubt and that the admission of Darla Harvey's testimony was reversible error. I would therefore reverse the Court of Criminal Appeals' judgment and remand for a new trial.

### Premeditation

The majority concludes that the circumstantial evidence was sufficient to support the jury's verdict that the defendant was guilty of the premeditated first degree murder of Virginia Jackson. In my view, the evidence was insufficient to sustain the conviction for first degree murder because there was no evidence of the defendant's planning, the defendant's prior relationship with the victim, the cause or manner of the victim's death, or any other evidence from which a rational trier of fact could have inferred beyond a reasonable doubt that the crime was premeditated, *i.e.*, committed "after the exercise of reflection and judgment." See Tenn. Code Ann. § 39-13-202(d) (1997).

When evaluating the sufficiency of the evidence, the Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are required to afford the prosecution the strongest legitimate view of the evidence in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Bland, 958 S.W.2d 651, 659 (Tenn.1997). Questions regarding the credibility of witnesses, the weight to be given the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. Id.; State v. Cazes, 875 S.W.2d 253, 259 (Tenn.1994).

At the time of the offense, first degree murder included a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (Supp.1995). The element of premeditation was defined as follows:

> "[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d) (Supp.1995).

This Court has traditionally cited several circumstances that may warrant the trier of fact to find premeditation: the defendant's use of a deadly weapon upon an unarmed victim; the particular cruelty of a killing; the defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; the defendant's preparations to conceal the crime that are undertaken before the crime is committed; and a defendant's calmness immediately after a killing. State v. Bland, 958 S.W.2d at 660; see also State v. Keough, 18 S.W.3d 175, 180 (Tenn. 2000). These factors, while not exhaustive, demonstrate that premeditation may be established by any evidence from which a rational trier of fact may infer that the killing was done after the "exercise of reflection and judgment." See Tenn. Code Ann. § 39-13-202(d). They also illustrate, however, that a jury may not speculate as to the events of a crime or the defendant's mental state. See State v. West, 844 S.W.2d 144, 148 (Tenn. 1992) (holding that evidence did not support jury's finding of premeditation and deliberation beyond a reasonable doubt).

The circumstantial evidence established that the victim accepted a ride from the defendant, that the victim's belongings were later found strewn along a road near her house, that the defendant was driving slowly with an object wrapped in a white sheet in the passenger seat of his truck, that the victim's mutilated and decomposed body was found not far from where the defendant had been driving, and that items found near the victim's body and a nearby campsite were linked to the defendant and the victim. Although there is no doubt that this evidence was sufficient to establish that the defendant killed the victim, that does not end the analysis.

In my view, there was no evidence from which a rational trier of fact could have inferred beyond a reasonable doubt that the defendant's actions in killing the victim were premeditated, *i.e.*, "after the exercise of reflection and judgment," either before, during or after the offense. There was no evidence in this unusual case, for example, establishing the manner in which the victim was killed, the cause of her death, or even the time or location of the killing. There was no evidence that the defendant had declared his intent to kill the victim or that he had any stated intent or motive in killing the victim. See Keough, 18 S.W.3d at 181. There was likewise no evidence that the

-2-

defendant procured a weapon in advance for the purpose of killing the victim, made preparations to conceal the killing before it was committed, or exhibited a calm or cool demeanor immediately after the killing. See West, 844 S.W.2d at 148. In short, evidence supporting the factors we have traditionally relied upon in analyzing premeditation was absent in this case. See id.

Despite the absence of proof, the majority concludes that there was sufficient circumstantial evidence to show that the killing was premeditated. I disagree. Given that there was no evidence establishing when, where, or even how the victim was killed, any inference that the killing involved a struggle, the use of restraints, or any other premeditated act by the defendant while the victim was alive is pure conjecture. Moreover, given that there was no evidence establishing the manner of the killing or the cause of death, any reasonable inference that the mutilation of the victim after her death was probative of the defendant's premeditation before the killing is likewise not supported by the record. In sum, there was simply no evidence of exactly what transpired from the time the victim accepted a ride from the defendant to the time she was killed and no evidence of the defendant's premeditated mental state before the killing. Although the prosecution's theory regarding the events may have been correct, "it remain[ed] only a theory, because the prosecution [had] no evidence to support it." West, 844 S.W.2d at 148.

Accordingly, I disagree with the majority's conclusion as to the sufficiency of the evidence and I would hold that the State's evidence in this unusual case was not sufficient for a rational trier of fact to have found the element of premeditation beyond a reasonable doubt.

## Admission of Darla Harvey's Testimony

My review of the record also indicates that the trial court committed reversible error in allowing Darla Harvey to testify that the defendant made her afraid and nervous by staring at her three weeks after the victim's disappearance. The testimony was irrelevant, unfairly prejudicial, and an improper lay opinion in violation of Tennessee Rules of Evidence 401, 403, and 701.[1]

As the majority summarizes, Darla Harvey testified that when Davidson was in Lakeview Tavern on October 12, 1995, *i.e.*, three weeks after the victim's disappearance, he sat and silently stared at her for over an hour while sipping his beer. Harvey stated that the defendant made her feel "uncomfortable" and that "something was wrong." She further stated that as the defendant's staring continued, she got a "gut feeling" that she should go outside and look at his truck. After examining his truck, she said to herself, "Good I got me a nut."[2] After re-entering the bar, her unease increased as the defendant continued to stare at her, went to the restroom, and looked out the back door. Harvey testified that it was "odd" for the defendant to leave the bar at one point to get a cigarette because he had just opened a pack of cigarettes. She believed that "something wasn't right" when

---

[1] Although the defendant argues that the admission of Harvey's testimony violated his federal and state rights to due process, I do not believe it is necessary to address these constitutional issues. See U.S. Const. amend. XIV; Tenn. Const. art. I., § 8.

[2] The defense's objection to this remark was sustained.

the defendant returned because he did not speak to her when she addressed him and he kept his hand in his pocket. Harvey said that by this time, her feeling about the defendant was so "bad" that she placed her gun close at hand and was ready to shoot the defendant if he came any closer. Finally, Harvey testified that she felt so anxious that she urged some customers to ask the defendant to leave and he did so.

Prior to Harvey's testimony, the trial court conducted a jury-out hearing and determined that Harvey's testimony was indicative of the defendant's "common scheme" and was admissible as evidence of motive. The trial court said:

> The probative value outweighs the prejudicial effect. I said it's highly
> prejudicial, but I think it's probative value . . . and the reason I'm
> letting it be entered is to prove a circumstantial evidence of motive,
> and that's the only reason I'm entering it now.

The Court of Criminal Appeals found that Harvey's statements about the defendant were relevant to show "intent and planning" but that the admission of her testimony regarding her feelings was error. The court found the error to be harmless, however, given that other witnesses conveyed similar stories about the defendant's behavior. See Tenn. R. App. P. 36(b); Tenn R. Crim. P. 52(a).

Rule 401 of the Tennessee Rules of Evidence defines relevant evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence that is relevant under Rule 401 may be excluded, however, when "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403.

Much of Darla Harvey's testimony, particularly her gut feelings, retrieval of her gun, and negative characterization of the defendant, was irrelevant under Rule 401 of the Tennessee Rules of Evidence. Although the majority reasons that the evidence was helpful to understanding why Harvey acted as she did, there was no showing that this witness's state of mind, gut feelings, or opinions describing the defendant's behavior some three weeks after the victim's disappearance had any probative value in determining what events occurred *with respect to the victim's death*. Moreover, there was no explanation of how Darla Harvey's testimony had any probative value with regard to the defendant's mental state on September 26, 1995. See Tenn. R. Evid. 401. Accordingly, the probative value of this testimony was substantially outweighed by its risk of unfair prejudice. Tenn. R. Evid. 403.[3]

In addition, I fail to see how Darla Harvey's testimony would be admissible as evidence of other crimes, wrongs or acts to establish "planning and intent" as asserted by the Court of Criminal Appeals. See Tenn. R. Evid. 404(b). As stated in Rule 404(b), "[e]vidence of other crimes, wrongs,

---

[3] I also note that there was no showing as to how Harvey's lay opinions were helpful to the determination of a fact in issue. Tenn. R. Evid. 701.

or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Although such evidence may be admissible for other purposes, there was no showing that Davidson's conduct as described by Darla Harvey was so unique or distinctive that it fit a "common scheme or plan" as found by the trial court and the Court of Criminal Appeals. See State v. Moore, 6 S.W.3d 235 (Tenn. 1999). Nor was there a showing that the evidence was admissible for any other purpose under Rule 404(b). Instead, the prosecution used this testimony to establish the defendant's alleged anti-social behavior by drinking alone in bars, remaining quiet, and staring at women.

Finally, I disagree that the admission of this evidence was harmless on the basis that it was cumulative to similar testimony from other witnesses. No other witness testified with the same level of unfairly prejudicial detail and characterization as did Darla Harvey. Indeed, it was Darla Harvey's testimony that the prosecution placed great emphasis upon in its closing arguments:

> You all remember Darla Harvey . . . . You recall what she said . . . [the defendant was] staring at her, blatantly I believe her words were. It made her feel uncomfortable . . . because Jerry Davidson was sitting there staring at her . . . . Well Darla Harvey at that time knew something was up because she sat there and said I knew he had opened up a new pack of cigarettes and I knew that he didn't need any new pack of cigarettes. And she goes to the end of that bar and she reaches up underneath there and she gets that gun and she flips it off safety and she is ready for Jerry Davidson . . . . And she got that gun and what did she say to you all? She sat there and said, "if he'd come just a little bit further, I'd have shot him."

(Emphasis added). Although the majority concludes that the testimony was "unlikely to result in any unfair prejudice," the prosecutor emphasized Darla Harvey's testimony as additional evidence on the close question of the defendant's mental state and alleged premeditation in killing the victim:

> [Davidson] . . . was a guy that scared [Darla Harvey] out of her wits. . . . It's . . . important because coupled with the other evidence in this case, listen to me when I say this, coupled with the other evidence in the case, it gives you a glimpse of the defendant Jerry Davidson's mind. Just a glimpse. Does it mean anything? Does it mean anything about motive in this case? I told you in the beginning of this case there's some things we weren't going to be able to prove, but maybe, maybe we have . . . . [Y]ou know the instruction the Court's going to give you, when you're considering the case of premeditated murder, listen to . . . what the judge is going to tell you. It tells you when you're considering whether he premeditatedly killed this woman, it tells you you kind of have to look in his mind.

(Emphasis added).

Accordingly, given the insufficient evidence of premeditation in this case and the prosecutor's emphasis on Darla Harvey's improper testimony for attempting to establish the defendant's mental state, I would hold that the trial court's ruling was reversible error.

### **Conclusion**

Accordingly, I disagree with the majority's decision affirming the defendant's conviction and sentence for premeditated first degree murder. I am convinced that the evidence was insufficient as to the element of premeditation and that the admission of Darla Harvey's testimony was reversible error. I would therefore reverse the Court of Criminal Appeals' judgment and remand for a new trial.

I am authorized to state that Justice Birch joins in this dissent with respect to the admission of Darla Harvey's testimony.

_____
E. RILEY ANDERSON, JUSTICE