**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT NASHVILLE**
**JULY SESSION, 1998**

FILED

September 30, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 01C01-9711-CC-00526 |
| Appellee | ) | |
| | ) | **STEWART COUNTY** |
| vs. | ) | |
| | ) | Hon. Leonard W. Martin, Judge |
| **DONALD WALLACE,** | ) | |
| | ) | **(Premeditated First Degree Murder)** |
| Appellant | ) | |

For the Appellant:

**Shipp R. Weems**
District Public Defender

**Richard D. Taylor, Jr.**
Assistant Public Defender

(ON APPEAL)

**Thomas Meeks**
Attorney at Law
137 Franklin Street
Clarksville, TN 37040

(AT TRIAL)

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Lisa A. Naylor**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**Dan M. Alsobrooks**
District Attorney General

**Jake Lockert**
Asst. District Attorney General
105 Sycamore Street
Ashland City, TN 37016

OPINION FILED: _____

REVERSED AND REMANDED

**David G. Hayes**
Judge

## OPINION

The appellant, Donald Wallace, was sentenced to a term of life imprisonment following his conviction by a Stewart County jury for the premeditated first degree murder of Melinda Sue Perrin. In the appeal of this conviction, the appellant contends that :

I. The evidence is insufficient to support a conviction for premeditated first degree murder;

II. The trial court erred in admitting statements made by the victim regarding the victim's state of mind;

III. The trial court erred in admitting photographs of the victim;

IV. The trial court erred in denying the jury the opportunity to examine, during its deliberations, a demonstrative exhibit introduced by the State.

After a review of the record and the applicable law, we find the evidence insufficient to support a conviction for premeditated first degree murder. Accordingly, we vacate the judgment of conviction and sentence entered by the trial court. However, we find the evidence sufficient to establish that the appellant knowingly killed Melinda Perrin and, accordingly, modify the judgment to reflect a conviction for second degree murder. This case is remanded to the trial court for proceedings consistent with this opinion.

## Background

Sometime on the afternoon of June 8, 1996, the appellant, accompanied by his girlfriend, Melinda Sue Perrin, traveled to the home of the appellant's life-time friend, Charles Morgan. Shortly after the couple's arrival, the appellant asked Morgan if he could borrow Morgan's twelve-gauge pump shotgun. Both the stock

and the barrel of this particular shotgun had been shortened.[1] The weapon was described as being "sawed-off," approximately fourteen to sixteen inches in overall length with "a pistol grip handle." Although Morgan stated that he would not loan the appellant the shotgun, the appellant continued in his request, explaining to Morgan that he needed the shotgun for protection because somebody was threatening to kill him. Although hesitant, Morgan eventually agreed to sell the weapon along with two shells of number six shot to the appellant for one hundred dollars. Melinda Perrin paid for the weapon with a hundred dollar bill.

After the sale was completed, Melinda mentioned that she was going to stay at Morgan's residence. Irritated by this comment, the appellant left the residence, got into his car, and began to back out of the driveway. Before the appellant got out of the driveway, Melinda caught up with him and got into the car.

After leaving Morgan's mobile home, the couple traveled to Clarksville, arriving at the residence of Norman and Linda Wallace around 3:00 p.m.[2] Melinda carried a six pack of Zima, an alcoholic beverage, into the Wallaces' home. Thirty to forty-five minutes after they arrived, the appellant and Norman left in the appellant's car. Norman insisted on driving because the appellant had been drinking beer. They first drove to the home of the appellant's mother, and, then, the appellant asked Norman to drive him to Indian Mound. The appellant stated that he needed to talk to a man named "Red." He explained that he owed Red some money. As a result of this debt, Red had made threats against the appellant's mother and Melinda. The appellant hoped to make arrangements with Red to pay him back and to stop the threats to his mother and Melinda.

---

[1]Additionally, Morgan testified that, in order to fire the gun, the safety catch must be off, the chamber must be loaded, and the shotgun pumped and fired.

[2]Norman Wallace is the appellant's third or fourth cousin and has known the appellant his entire life.

Just prior to reaching the Stewart County line, one of the tires on the appellant's dark blue Chrysler Fifth Avenue went flat. While the appellant was changing the tire, Norman noticed the shotgun, a box of ammunition, and a .22 target pistol in the car. The appellant stated that he and Melinda had just bought the gun. Once the tire was changed, the two continued to Indian Mound. Before reaching Red's house, the appellant asked Norman where the safety was on the shotgun. At trial, Norman testified that it was during this time that he believed the appellant loaded the weapon.

When they arrived at Red's house, the appellant instructed Norman to turn the vehicle around so that the passenger side was facing the front of Red's house. He told Norman that he was afraid that Red would come out shooting. However, Red was not at home. Norman then drove the appellant to the residence of Junior Shepard in Big Rock. Junior's wife, Beverly, came out to the car and told the appellant to leave or she would call the police.

Meanwhile, Melinda remained in Clarksville with Linda Wallace. Linda, a former beautician, cut Melinda's hair while the two women visited. Linda testified at trial that, during this visit, Melinda told her that she was afraid of the appellant because he had previously pulled a gun on her. Linda stated that, although Melinda had consumed one Zima in her presence, she did not appear intoxicated.

The two men were gone approximately two hours before returning to Norman Wallace's residence. The two couples sat outside talking for approximately forty minutes before the appellant and Melinda left around 6:00 p.m, headed in the direction of Stewart County. The Wallaces testified that there did not appear to be any discord between the appellant and Melinda at any point during the visit. In fact, the appellant frequently called Melinda "baby" or "honey" and he told Norman that he and Melinda "got along real good together" and that "he wanted him and Melinda

to take off and go someplace and move out of the country and be together the rest of their lives."

Shortly after 7:00 p.m., several customers at J.T.'s Bait Shop in Stewart County noticed a dark blue or black Fifth Avenue or LTD approaching from the direction of Clarksville. The vehicle drove onto the parking lot at a high rate of speed and then came to a sudden stop. The door on the driver's side of the vehicle opened and a man's foot emerged. The man leaned into the vehicle and appeared to have a shotgun in his hand. One witness, Heather Spiceland Stevens, testified that, when the car came to a halt, she observed the man slap his female passenger. A loud boom then reverberated from the vehicle and smoke came out the windows. Several bystanders described what appeared to them to be the head of the female passenger exploding. The driver of the vehicle backed the car out of the parking lot and drove in the direction of Dover. When the car was approximately three hundred yards from the parking lot, the bystanders heard another loud noise. At trial, the witnesses at the bait shop/convenience store identified the appellant as the male driver of the vehicle and Melinda Perrin as the female passenger.

Stewart County Deputy Kenny Anderson responded to the dispatch regarding the shooting at J.T.'s Bait Shop. Once at the scene, Deputy Anderson found pieces of human flesh scattered on the ground, as well as pieces of bone and parts of a denture plate.

That same evening, Ronald Buchanan had observed a dark colored vehicle leave from a secluded area on Riversbend Road in Stewart County between 6:30 p.m. and 8:00 p.m. and, later, had learned of the shooting incident at J.T.'s Bait Shop. The next afternoon, at around 3:00 p.m., Ray Richardson, Ronald Buchanan, and Harold Chester decided to ride their four wheelers in the Wilson Hollow area of Riversbend Road in search of the dark blue vehicle. The men had ventured onto an

5

old logging road about one hundred and fifty yards off of Riversbend Road. They noticed fresh tire tracks on the road and Ray Richardson spotted an area where it appeared that something had been dragged through the weeds. The men decided to investigate. They found a body approximately fifty-six feet off of the logging road in the weeds. They notified the sheriff's department and led the authorities to the scene.

Dr. Robert Lee, the Stewart County Medical Examiner, and Tennessee Bureau of Investigation Special Agent Mike Breedlove arrived at the scene and discovered the body of a female, subsequently identified as Melinda Perrin, whose face had been obliterated by a shotgun blast. The body was sent to Dr. Charles Harlan, the chief medical examiner, who would conduct the autopsy.

Dr. Harlan determined that the thirty-nine year old victim had sustained a shotgun wound to the left side of the neck which was consistent with a near shotgun wound. As a result of the injury, the victim suffered multiple skull fractures, fractures of the jaw bone and the bone connecting the upper teeth, bruising to the brain, and a collapsed right eye. He opined that, after being struck by the shotgun blast to the head, the victim would have ceased being functional, and, most likely would have been rendered unconscious. The victim could have lived from between five to ten minutes from the delivery of the injury. Dr. Harlan determined that, based on the distance and angle of the gunshot wound, it would have been very difficult for the wound to have been self-inflicted. He was also able to determine that, at the time of death, the victim had a blood alcohol level of .12 per cent and that there were traces of Fluoxtenine (a form of Prozac), Norpropoxyphene (the metabolic breakdown of Darvon, a painkiller), Dihydrocodeinone (a synthetic opiate) and ephedrine/pseudoephedrine (cold medicine) in her bloodstream.

On June 26, eighteen days after the homicide, the appellant turned himself in

6

to authorities. That evening during visiting hours, Deputy Anderson overheard the appellant tell one of his visitors that he could not understand why he was a suspect because he was not even with the victim that day or at the time of the murder. Neither the appellant's vehicle nor the murder weapon were ever recovered.

At his subsequent trial, the appellant pled not guilty to the charge of premeditated murder, and, in defense suggested that the fatal wound had been self-inflicted. The jury rejected this theory and returned a guilty verdict as to the charge of premeditated first degree murder.

## I. Waiver of Evidentiary Issues

The judgment of conviction was entered against the appellant on January 31, 1997. A timely, but, *pro se* motion for new trial was filed by the appellant on February 6, 1997. On this date, the appellant was still represented by retained trial counsel. For this reason, the trial court was not obligated to consider the *pro se* motion for new trial, since a defendant is not entitled to representation by counsel and to simultaneously proceed *pro se*. State v. Clark, No. 9 (Tenn. Crim. App. at Jackson, May 7, 1986), perm. to appeal denied, (Tenn. Sept. 8, 1986) (citing State v. Burkhart, 541 S.W.2d 365, 371 (Tenn.1976)).

On May 20, 1997, trial counsel filed a belated motion for new trial on the appellant's behalf. A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. Tenn. R. Crim. P. 45(b). A trial judge does not have the jurisdiction to hear and determine the merits of a motion for new trial that has not been timely filed. State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Moreover, this court does not have the authority

7

to waive the untimely filing of a motion for new trial. Tenn. R. App. P. 4(a). Nonetheless, this court may consider alleged errors which affect the sufficiency of the evidence, or sentencing, as well as plain errors affecting the substantial rights of the defendant where it may be necessary to do substantial justice. Tenn. R. App. P. 3(e); 13(b); Tenn. R. Crim. P. 52(b). Thus, the appellant's issues, other than those which relate to the sufficiency of the evidence, are deemed waived in this case. See State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997).

## I. Sufficiency of the Evidence

The appellant contends that the evidence presented at trial was insufficient to enable a rational juror to find him guilty of premeditated first degree murder. Specifically, he asserts that there is no evidence to show premeditation. He argues that, at best, the evidence supports theories of accidental shooting or a shooting in the heat of passion. The State contends that the appellant's procurement of a weapon, the victim's statements to Linda Wallace, and the appellant's actions after the homicide establish the appellant's preconceived intent to kill Melinda Perrin.

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, -- U.S.--, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or

reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993).

Once a homicide is established it is presumed to be second degree murder. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). The State, then, has the burden of proving the element of premeditation to elevate the offense to first degree murder.[3] Id. Premeditation necessitates "the exercise of reflection and judgment," requiring a "previously formed design or intent to kill." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992).

The element of premeditation is a question for the jury and may be inferred from the circumstances surrounding the killing. State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993), perm. to appeal denied, (Tenn. 1994). because the trier of fact cannot speculate as to what was in the killer's mind, the existence of facts of premeditation must be determined from the appellant's conduct in light of the surrounding circumstances. State v. Wright, No. 01C01-9503-CC-00093 (Tenn. Crim. App. at Nashville, Jan. 5, 1996). Although there is no strict standard governing what constitutes proof of premeditation, several relevant circumstances are helpful, including: the use of a deadly weapon upon an unarmed victim; the fact that the killing was particularly cruel; declaration by the defendant of his intent to kill; and the making of preparations before the killing for the purpose of concealing the crime. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997), cert. denied, -- U.S. --, 118 S.Ct. 1536 (1998) (citing Brown, 836 S.W.2d at 541-542). Additional factors from which a jury may infer premeditation include planning activities by the appellant prior to the killing, the appellant's prior relationship with the victim, and the nature of the killing. Gentry, 881 S.W.2d at 4-5 (citation omitted).

---

[3]First degree murder, not committed in the perpetration of a crime, requires the "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1995 Supp.).

9

Again, taken in the light most favorable to the State, the proof established that the appellant and the victim were involved in a close relationship. On the day of the homicide, the appellant, accompanied by the victim, went to the home of Charles Morgan where he purchased a shotgun, allegedly for his protection. The couple then proceeded to the residence of Norman and Linda Wallace. Notwithstanding Melinda's revelation to Linda Wallace that she was fearful of the appellant, there is no indication that Melinda did not voluntarily accompany the appellant on his excursions that day. Indeed, the proof shows that, on this evening, the appellant called Melinda "honey" and "baby" and that the relationship between the two appeared amiable. Witnesses confirmed that both the appellant and the victim had been drinking alcohol throughout the day.

After careful consideration of all the facts and circumstances surrounding this homicide, we are unable to conclude that the element of premeditation was established. Indeed, the appellant's erratic driving onto the parking lot of a business premises where he proceeded to slap the victim in the face and then shoot her in the presence of numerous witnesses is not indicative of the "exercise of reflection and judgment." As evidence of premeditation, the State contends that the appellant's procurement of a weapon, the victim's state of mind, and the appellant's subsequent concealment of evidence of the crime support their theory of a previously formed intent to kill. Moreover, the State asserts that, "[m]ost importantly, numerous eyewitnesses implicated the defendant as the shooter." First, although proof of identity is important in establishing guilt, identity of the shooter is <u>not</u> evidence of premeditation. Second, the proof does not support the proposition that the appellant obtained the weapon to use against the victim. Rather, the only proof as to this issue indicates that the appellant purchased the weapon in order to defend himself, Melinda, and his mother from the threats of an irate creditor. Third, testimony that the victim was fearful of the appellant is not indicative of premeditation, rather, it was introduced solely to refute the otherwise overwhelming

proof of their harmonious relationship. Cf. State v. Roe, No. 02C01-9702-CR-00054 (Tenn. Crim. App. at Jackson, Jan. 12, 1998). Finally, the fact that the appellant concealed the body of the victim in an isolated area and that the car and the murder weapon were never recovered is not prima facie evidence of a premeditated homicide. "Although concealment of evidence may itself be evidence of guilt . . . [t]he concealment of evidence may be associated with the commission of any crime and the accompanying fear of punishment." State v. Bailey, No. 01C01-9403-CC-00105 (Tenn. Crim. App. at Nashville, Jul. 20, 1995), perm. to appeal denied, (Tenn. Jan. 8, 1996) (citing Cagle v. State, 507 S.W.2d 121, 129 (Tenn. Crim. App. 1973)). *"The fact that evidence is subsequently hidden from the police reveals nothing about a criminal's state of mind before the crime."* Id. (citation omitted) (emphasis in original). Accordingly, the concealment of evidence may not be used to prove the element of premeditation. West, 844 S.W.2d at 148. See also State v. Schafer, No. 03C01-9702-CR-00057 (Tenn. Crim. App. at Knoxville, Dec. 9, 1997). In sum, the absence of motive, the absence of planning activity and the circumstances surrounding the manner of the killing, *i.e.*, in the public's view, all militate against proof of premeditation or that the appellant killed according to a preconceived design. Absent the element of premeditation, the appellant's conviction for first degree murder cannot stand.

Notwithstanding this conclusion, again, a homicide is presumed to be second degree murder. Brown, 836 S.W.2d at 543. Second degree murder is a knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1) (1995 Supp.). Under the facts of this case, we find that the proof establishes that the appellant acted "knowingly" with an awareness that his discharge of a sawed off shotgun less than two feet from the victim's head was reasonably certain to cause death. See Tenn. Code Ann. § 39-11-106(20) (1995 Supp.). We conclude that there is evidence to support "knowing" conduct, and, therefore, a conviction for second degree murder.

11

For the reasons set forth above, we reverse the appellant's conviction for premeditated murder and vacate the accompanying sentence. This cause is remanded to the trial court for entry of a judgment of conviction in accordance with this opinion and for re-sentencing consistent with the principles of sentencing.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
PAUL G. SUMMERS, Judge

_____
JERRY L. SMITH, Judge