**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JANUARY SESSION, 1999**

FILED

March 15, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 01C01-9805-CR-00108** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **DAVIDSON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. CHERYL BLACKBURN,** |
| **MICHAEL J. RUSSO,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (First Degree Murder) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF DAVIDSON COUNTY

FOR THE APPELLANT:

F. MICHIE GIBSON, JR.
1416 Parkway Towers
404 James Robertson Parkway
Nashville, TN 37219

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY BEHAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

SHARON BROX
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Michael J. Russo, appeals as of right his conviction for the first degree premeditated murder of his wife. The only assignment of error for review is the sufficiency of the convicting evidence, which Defendant contends does not support a finding of premeditation beyond a reasonable doubt. We disagree, and we affirm the verdict of the jury as approved by the trial court.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court

find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

In this case, the State and Defendant presented the jury with conflicting factual scenarios regarding how the shooting of the victim occurred. According to Defendant, while he and his wife argued, she brandished a knife, causing him to pin her against the wall in self-defense. He admitted to cocking the handgun to frighten her; but he testified that she then pushed him away from her, causing the gun to accidentally discharge as he stumbled backward. A bullet entered her nose and traveled through her skull, killing her instantly.

He testified that he was drunk—that he had consumed eight or nine drinks and "a couple of beers" in approximately one hour prior to returning home from work the night of the murder. However, even his own testimony reflected that he was coherent and remembered clearly his own version of the evening's events. In addition, he stated that his wife had slapped him and cut his face with the knife in the course of their confrontation. A witness for the defense who saw Defendant immediately after the murder testified that his face was cut and bleeding.

The State, on the other hand, presented Carmella Russo, daughter of Defendant and the victim, who testified that while she was in her room, she heard her parents arguing. She knew from past experience that her parents did not want to argue in her presence, so she left her room and entered the area where her parents continued to fight. She watched as Defendant pinned her mother against the wall, holding her arms as he yelled at her.

According to Carmella, Defendant "was still yelling at [the victim] and hitting her, and then he went to go get a knife and was telling her if she was so big and bad, why didn't she cut him." The victim threw the steak knife to the floor, and Defendant picked it up, bent the blade, and threw it at her, hitting her in the stomach. Then, "she built up enough nerve to push him off of her, and he caught hi[m]self in the doorway . . . and went into the other room and got the gun."

Carmella testified that when Defendant came back, he asked the victim "something like why are you afraid to die?" or "Are you afraid to die or why aren't you yelling?" The victim replied that she was not afraid to die because she knew where she would be going (i.e., to heaven). Next, Defendant put the gun against the victim's nose, and Carmella closed her eyes. While Carmella's eyes were closed, she heard a gunshot. When she opened her eyes, she saw her mother "on the ground in a puddle of blood," and her father with the gun still in his hand.

Carmella ran into the bathroom until she heard her father leave; she then emerged, called 911, and attempted unsuccessfully to resuscitate her mother. She testified on redirect that when Defendant placed the gun against the victim's nose, she believed that "he asked her are you afraid to die."

First degree murder is a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation "is an act done after the exercise of reflection and judgment," and it means that "the intent to kill must have been formed prior to the act itself." Id. § 39-13-202(d). Furthermore,

> [i]t is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be

-4-

carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Id.

The element of premeditation is a question for the jury and "may be established by proof of the circumstances surrounding the killing." State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997) (citing State v. Brown, 836 S.W.2d 530, 539 (Tenn. 1992)), cert. denied, 118 S. Ct. 1536 (1998); see also State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998). Our supreme court has identified several factors tending to demonstrate existence of premeditation, including: the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; and calmness immediately after the killing. Bland, 958 S.W.2d at 660 (citing Brown, 836 S.W.2d at 541-42, and State v. West, 844 S.W.2d 144, 148 (Tenn. 1992)); Pike, 978 S.W.2d at 914-15.

While certain of these factors are absent in this case, the jury heard testimony from Carmella Russo, an eyewitness, that her mother was unarmed at all times and that when Defendant handed her a steak knife and taunted her to cut him, she threw the knife to the floor and did not retrieve it. In addition, Carmella stated that her father left the immediate place of the confrontation twice—once to obtain this knife that he threw at the victim, and later, to obtain the gun with which he shot her. Finally, Carmella testified that Defendant asked the victim, while he pressed a gun to her nose, if she was afraid to die, to which the

victim replied that she was not afraid because she knew "where she was going."

Defendant presented a different set of facts to the jury, creating a scenario in which the killing was a provoked, accidental shooting. This, therefore, presented a question of fact for the jury. We conclude that the evidence was sufficient to permit the jury to find Defendant guilty of premeditated first degree murder, and we affirm the jury's exercise of its fact-finding power to convict Defendant. The judgment of the trial court is accordingly affirmed.


_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JERRY L. SMITH, JUDGE


_____
THOMAS T. WOODALL, JUDGE