# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## APRIL SESSION, 1999

FILED

July 6, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9708-CR-00339** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **WASHINGTON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ARDEN L. HILL** |
| **JAMES E. GAYLES,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - First Degree Murder)** |


FOR THE APPELLANT:

DONALD E. SPURRELL
128 East Market Street
Johnson City, TN 37604

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ERIK W. DAAB
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

DAVID CROCKETT
District Attorney General

JOE CRUMLEY
KENT GARLAND
Assistant District Attorneys
First Judicial District
Jonesborough, TN 37659


OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On July 7, 1993, Appellant James E. Gayles was charged with one count of first degree murder. After a jury trial on February 6–7, 1995, Appellant was convicted of first degree murder and was sentenced to life imprisonment. Appellant challenges his conviction, raising the following issues:

1) whether the evidence was sufficient to support his conviction; and

2) whether the State improperly failed to disclose a leniency agreement it had with one of its witnesses.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Officer Lisa Coppock of the Johnson City Police Department testified that on May 2, 1993, she was dispatched to investigate a shooting in the parking lot of Pro-Diesel in Johnson City. When she arrived, she found Darrell Sturdivandt lying on his back next to a blue vehicle. Sturdivandt was declared dead at the scene. It appeared that he had a small caliber gunshot wound in the middle of his back. There was also a spent .25 caliber shell casing on the ground next to Sturdivandt's right foot.

Doctor William McCormick testified that he examined Sturdivandt's body on May 2, 1993. Dr. McCormick determined that Sturdivandt had died as a result of being shot in the back with a .25 caliber bullet. Dr. McCormick further

determined that Sturdivandt had a blood alcohol level of .058 and traces of marijuana in his system when he died.

Patrick Hale testified that he was at the Black & Tan Club on May 2, 1993, when he heard some gunshots coming from the vicinity of Pro-Diesel. When Hale looked in the direction of Pro-Diesel, he saw Appellant run and get in a van driven by Stephanie Bowman. Hale then heard Appellant yell, "let's go, let's go" and the van accelerated down the street.

Anthony Forney testified that he was a passenger in Bowman's van when Appellant jumped in the van and said, "let's go." Anthony Forney noticed that Appellant smelled like firecrackers or gunpowder and appeared to be acting paranoid and frightened. Forney could see the shape of a gun hidden under Appellant's shirt.

Dwight Forney testified that the night before the shooting, Appellant had stated that "if people didn't quit messing over him he was going to take somebody out—someone out, or, make an example of somebody."

Charles Delapp testified that on May 2, 1993, he saw Appellant walk toward a blue car in the Pro-Diesel parking lot. Shortly thereafter, Delapp heard a gunshot and saw Appellant jogging away from the area where the sound of the gunshot originated. Appellant then got in a van and the van, drove away. Delapp could see that Appellant had wrapped a T-shirt around his hand.

Jason Beam testified that he was a friend of Sturdivandt. He had seen Sturdivandt steal cocaine from drug dealers by taking it out of their hands and fleeing or by giving them less money than the cocaine was worth.

Alonzo Norman testified that he witnessed a drug transaction in which an individual gave one dollar to Appellant for fifty dollars worth of cocaine. Appellant appeared to be upset and stated, "man, I seen him before and I'll see him again."

According to Norman, on May 2, 1993, Appellant came to his residence and told Norman that he wanted to go to New York with him. Appellant stated, "I think I shot somebody." Appellant also stated, "the man tried to pull something out on me and I shot him." When Norman asked Appellant who he had shot, Appellant stated that he had shot "the man that—that gave [me] the dollar for the fifty."

Stephanie Bowman testified that she was driving a van on May 2, 1993, when Appellant came running across the street with a gun in his hand. Appellant got in the van and yelled, "let's go—let's go." Appellant stated, "what the hell are you all doing . . . you all are riding around having fun while I just had to do a man." Bowman noticed that when Appellant got in the van, she could smell what appeared to be the odor of firecrackers or gunpowder.

Teresa Gayles, Nicole Friday, Derrick Friday, Denika Harper, and Jo Hazel all testified that Appellant was in New York on May 2, 1993.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction for first degree murder. Appellant concedes that the evidence was sufficient to support a conviction for second degree murder, but contends that it was insufficient to support a conviction for first degree murder because the State failed to establish the elements of premeditation and deliberation.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim.

App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

When Sturdivandt was killed in 1993, Tennessee's first degree murder statute provided that "[f]irst degree murder is: [a]n intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202 (1993).[1] Premeditation requires a showing of a previously formed design or intent to kill. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). Deliberation requires that the offense be committed with cool purpose, free of the passions of the moment. Id. Although premeditation "may be formed in an instant, deliberation requires some period of reflection, during which the mind is 'free from the influence of excitement, or passion.'" State v. Brown, 836 S.W.2d 530, 538 (Tenn. 1992) (citation omitted). While it remains true that no specific length of time is required for the formation of a cool, dispassionate intent to kill, more than a "split-second" of reflection is required in order to satisfy the elements of premeditation and deliberation. Id. at 543.

The elements of premeditation and deliberation are questions for the jury which may be established by proof of the circumstances surrounding the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Tennessee courts have delineated several circumstances that may be indicative of premeditation and deliberation, including

---

[1] A 1995 amendment eliminated deliberation as an element of first degree murder. See Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1998) ("First degree murder is: A premeditated and intentional killing of another.").

facts from which motive may be inferred, <u>Bordis</u>, 905 S.W.2d at 222; declarations by the defendant of an intent to kill, <u>State v. Pike</u>, 978 S.W.2d 904, 914 (Tenn. 1998); the use of a deadly weapon upon an unarmed victim, <u>Brown</u>, 836 S.W.2d at 841; and facts about the nature of the killing, <u>Bordis</u>, 905 S.W.2d at 222.

Initially, we conclude that when the evidence is viewed in the light most favorable to the State, the evidence was clearly sufficient for a rational jury to find beyond a reasonable doubt that Appellant was the person who killed Sturdivandt. Hale and Delapp both saw Appellant run away from the scene of the murder and get in a van shortly after they heard gunshots. Bowman and Anthony Forney both smelled the odor of firecrackers or gunpowder when Appellant got in the van. Further, Anthony Forney could see the shape of a gun hidden under Appellant's shirt, and Bowman actually saw a gun in Appellant's hand. In addition, Appellant told Bowman that he "just had to do a man." Finally, Appellant told Norman on the night of the shooting that he had just shot the man who had previously given him one dollar for fifty dollar's worth of cocaine.

We also conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Appellant intentionally killed Sturdivandt with premeditation and deliberation. First, the State presented evidence that Appellant had a motive to kill Sturdivandt because Sturdivandt had cheated him during a drug transaction. Norman witnessed an individual pay one dollar to Appellant for fifty dollar's worth of cocaine and Norman heard Appellant say that he had seen that individual before and he would see him again. Norman also believed that Appellant appeared to be upset at the time. Further, Appellant told

Dwight Forney the night before the shooting that "if people didn't quit messing over him he was going to take somebody out—someone out, or, make an example of somebody." Shortly after the shooting, Appellant told Norman that he had shot the individual who had paid him one dollar for fifty dollar's worth of cocaine.

Second, while there was no evidence that Appellant had previously expressed an intent to kill Sturdivandt, there was clearly evidence that Appellant had expressed an intent to get revenge on Sturdivandt. As previously stated, Appellant told Norman that he would see the person who had cheated him in the drug transaction again and told Dwight Forney that he was going to make an example out of someone.

Third, the evidence showed that Sturdivandt was unarmed when Appellant shot him. Beam testified that he had never known Sturdivandt to carry a gun or a knife and Coppock testified that Sturdivandt did not have any weapons on his person and no weapons were found at the scene of the shooting.

Fourth, the nature of the killing indicates that it was deliberate and premeditated. Indeed, the evidence showed that Appellant shot Sturdivandt when Sturdivandt was facing away from him. Further, the fact that Appellant did not kill Sturdivandt until sometime after the drug transaction indicates that he had time to reflect on his decision to take revenge on Sturdivandt.

In short, we conclude that this evidence was sufficient for a rational jury to find the essential elements of first degree murder beyond a reasonable doubt. This issue has no merit.

### III. LENIENCY AGREEMENT

Appellant contends that he is entitled to a new trial because the State failed to disclose that it had an implicit agreement with Norman that it would drop certain charges against him and would be lenient with respect to other charges if he testified against Appellant.

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the prosecution has a constitutional duty to furnish the accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the potential punishment that may be imposed. Failure to reveal exculpatory evidence violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. Id. 373 U.S. at 87, 83 S.Ct. at 1196–97. The prosecution must also disclose evidence which may be used by the defense to impeach a witness. Giglio v. United States, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L Ed.2d 104 (1972); Workman v. State, 868 S.W.2d 705, 709 (Tenn. Crim. App. 1993). Because promises the State makes to a witness in exchange for his or her testimony relate directly to the credibility of the witness, the State has a duty to disclose evidence of any promises it has made to a prosecution witness in exchange for his or her testimony. Hartman v. State, 896 S.W.2d 94, 101 (Tenn. 1995) (citation omitted).

Before a reviewing court may find a due process violation under Brady, all of the following four prerequisites must be satisfied:

1) The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
2) The State must have suppressed the information;
3) The information must have been favorable to the accused; and
4) The information must have been material.

State v. Evans, 838 S.W.2d 185, 196 (Tenn. 1992). In Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995), the United States Supreme Court stated that in determining whether information is material, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

During the hearing on Appellant's motion for a new trial, Norman testified that when he testified at trial, he was scared because he had been charged with coercion of a witness, being an accessory after the fact to first degree murder, and multiple drug offenses. Norman also testified that his attorneys told him that the prosecutor could not make any deals with him before he testified, but if he did testify, the prosecutor would have to drop the charges for being an accessory after the fact and coercion of a witness and the prosecutor would also be lenient with respect to the drug charges. However, Norman admitted that he had only met with the prosecutor one time before he testified and expressly stated that the prosecutor had never offered him anything in return for his testimony.

Mike Kellum, one of Norman's attorneys, provided an affidavit in which he stated that the prosecutor had approached him and said that if Norman testified

-10-

truthfully in Appellant's trial, the "testimony would be appreciated and considered in any future plea offers regarding" the charges against Norman of being an accessory after the fact and coercion of a witness. However, Kellum did not testify during the hearing on the motion for a new trial.

Deborah Huskins, another of Norman's attorneys, testified during the hearing on the motion for a new trial that she had believed that if Norman testified truthfully at Appellant's trial, it would make a difference in any sentence he subsequently received in the drug case. However, Huskins also testified that although she believed it would benefit Norman to testify truthfully, "we had absolutely no agreement as to what plea if any we would be entering, the number of years, ranges, we—we did not discuss any specifics like that, not anything." Further, Huskins testified that she and Kellum had explained to Norman that the prosecutor had not made any definite offer of leniency in return for his testimony.

The trial court found that there was no merit to Appellant's claim that he was entitled to a new trial because the State had failed to disclose that it had a leniency agreement with Norman. Although the trial court made no express findings of fact, the court did note that Norman's credibility was questionable. In addition, the court's ruling necessarily implies a finding that there had been no implicit leniency agreement between the State and Norman. The evidence does not preponderate against that finding. Indeed, Appellant failed to introduce any evidence that the prosecutor promised Norman anything definite in return for his testimony.[2] At most, Appellant merely established that the prosecutor would take

---

[2] Appellant contends that the subsequent dismissal of the charges against Norman for being an accessory after the fact and coercion of a witness proves that Norman did have a leniency agreement with the State. However, the record indicates that the charge for being an accessory after the fact was

Norman's decision to testify truthfully into "consideration" in any future plea negotiations. An indefinite offer of "consideration" falls far short of constituting an agreement. In addition, although Norman may well have believed that he would receive leniency in return for his testimony, the unilateral belief of one person is insufficient to create an agreement. In short, Appellant had failed to show that there was any agreement between the State and Norman in regard to Norman's testimony. This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
JOE G. RILEY, JUDGE


_____
NORMA MCGEE OGLE, JUDGE

---

dismissed because there was insufficient evidence to support a conviction, and the charge for coercion of a witness was dismissed because the victim did not want the case to be prosecuted. Further, the prosecutor expressly informed the jury that if Norman testified truthfully, the charge for being an accessory after the fact would be dropped.